## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERESY

| | |
|---|---|
| SAHARA LOGAN, on behalf of herself and all others similarly situated, | ) ) ) Civil Action No.: |
| Plaintiff, | ) ) ) |
| v. | ) **CLASS/COLLECTIVE ACTION** ) **COMPLAINT** ) |
| P.R.B.A. CORP. d/b/a BARE EXPOSURE, ANTHONY ARIEMMA, RAY ARIEMMA, PAT VELTRE, and DOE DEFENDANTS 1-10. | ) ) ) **JURY TRIAL DEMANDED** ) |
| Defendants. | ) ) ) ) |

Plaintiff Sahara Logan ("Logan" or "Plaintiff"), individually and on behalf of all similarly situated employees, brings this Class/Collective action lawsuit against Defendants P.R.B.A. Corp. ("Bare Exposure Club"), Anthony Ariemma, Ray Ariemma, Pat Veltre and Doe Defendants 1-10 (Collectively, "Defendants") seeking to recover for Defendants' violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* (the "FLSA"), the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. § 34:11-4.1, *et seq.*, the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56a, *et seq.*, and New Jersey common law.  Plaintiff, on behalf of herself and all others similarly situated, alleges as follows:

### INTRODUCTION

1.      As explained herein, under applicable employment laws all employees are entitled to a defined minimum wage and premium overtime compensation for all hours worked in excess of forty in a given work week (unless the employee is determined to be exempt), and are protected from having improper deductions taken from their wages, including their tips.  However, Defendants (as defined herein) improperly classified Plaintiff and other exotic entertainers

("Dancers") as "independent contractors."  Consequently, Defendants failed to pay Dancers at least the applicable minimum wage.  In addition, Defendants required Dancers to work in excess of forty hours per work week, and then failed to pay them premium overtime compensation. Further, Defendants improperly collected a portion of the tips Plaintiff and other Dancers receive from customers. As set forth herein, such conduct is in violation of applicable state and federal wage and hour laws.

2.      Dancers who work, or have worked, for Defendants, including Plaintiff and her current and former co-workers, work in an "unorganized" industry where many workers are "disenfranchised" by the wide disparities in bargaining power between workers and club owners. *See* Holly Wilmet, *Naked Feminism: The Unionization of the Adult Entertainment Industry*, 7 Am. U.J. Gender Soc. Pol'y & L. 465, 466 (1999).

3.      Accordingly, adult entertainment clubs such as those operated by Defendants are well-positioned to take advantage of Dancers and routinely deny them basic workplace rights.

4.      Over the past two decades, the United States Department of Labor ("DOL") and courts across the country have recognized that Dancers are employees, not independent contractors, and thus entitled to protection under various state and federal wage and hour laws.

5.      Despite these significant strides, adult night clubs across the country still routinely deny Dancers the basic protections they are accorded under state and federal law.  Indeed, the Bare Exposure Club is no exception.  As set forth herein, the Bare Exposure Club regularly deprives Dancers of their rights under federal law, as well as the laws of New Jersey.  Plaintiff brings this lawsuit to address these improper pay practices.

## SUMMARY OF CLAIMS

6.      Plaintiff brings this action as a collective action to recover unpaid wages, including inappropriately withheld tips, pursuant to the Fair Labor Standards Act of 1938, as amended, 29

U.S.C. § 201 *et seq*. ("FLSA" or the "Act").

7.      In particular, Plaintiff brings this suit, pursuant to Section 216(b) of the FLSA, on

behalf of the following similarly situated persons:

> All current and former Dancers who have worked for Defendants
> within the statutory period covered by this Complaint and elect to
> opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the
> "Nationwide FLSA Class").

8.      Plaintiff also brings this action as a state-wide class action to recover unpaid wages,

including inappropriately withheld tips, pursuant to the New Jersey Wage Payment Law

("NJWPL"), N.J.S.A. § 34:11-4.1, *et seq*., the New Jersey Wage and Hour Law ("NJWHL"),

N.J.S.A. § 34:11-56a, *et seq.*, and New Jersey common law (the "NJ State Laws").

9.      Specifically, Plaintiff brings this suit, pursuant to Fed. R. Civ. P. 23,  on behalf of a

New Jersey class of similarly situated persons composed of:

> All current and former Dancers who have worked for Defendants in
> the State of New Jersey during the statutory period covered by this
> Complaint (the "NJ Class").

10.     Plaintiff alleges on behalf of the Nationwide FLSA Class that they are: (i) entitled

to unpaid minimum wages from Defendants for hours worked for which Defendants failed to pay

the mandatory minimum wage; (ii) entitled to unpaid overtime wages for all hours worked in

excess of forty in a work week; (iii) entitled to the tips that Defendants withheld from them, in

violation of 29 U.S.C. § 203(m)(2)(B); and (iv) entitled to liquidated damages pursuant to  29

U.S.C. § 216(b).

11.     Plaintiff alleges on behalf of the NJ Class that Defendants violated the NJ State

Laws by, *inter alia*: (i) failing to pay Dancers the appropriate minimum wages for all hours

worked; (ii) improperly denying Dancers overtime wages for all hours worked in excess of forty

hours in a work week; and (iii) inappropriately withholding and/or deducting unlawful amounts from the tips earned by the NJ Class.

## PARTIES

12.     Plaintiff Sahara Logan is a resident and citizen of the State of Pennsylvania who was employed by Defendants as a "Dancer" at The Bare Exposure Club at 2303 Pacific Ave., in Atlantic City, New Jersey, from July 2016 and working at various times until approximately August 2017.

13.     While employed by Defendants, Plaintiff was improperly classified as an independent contractor and, consequently, Defendants failed to compensate Plaintiff properly for all hours worked.

14.     Plaintiff consents in writing to be a Plaintiff in this action and has filed her executed Consent to Sue form.

15.     Defendant P.R.B.A. Corp. d/b/a The Bare Exposure Club is a New Jersey corporation with its principal place of business located in Atlantic City, New Jersey.   Upon information and belief, Defendant P.R.B.A. Corp. owns and operates The Bare Exposure Club located at 2303 Pacific Ave., Atlantic City, New Jersey.

16.     Defendant Anthony Ariemma is a member of the Board of Directors of P.R.B.A. Corp. and P.R.B.A.'s Registered Agent with a registered office at 2203 Pacific Ave., Atlantic City, New Jersey.

17.     Defendant Ray Ariemma is a member of the Board of Directors of P.R.B.A Corp. and resides at 1717 Gajewski Lane, Cedar Run, New Jersey.

18.     Defendant Pat Veltre is a member of the Board of Directors of P.R.B.A. Corp. and resides at 1717 Gajewski Lane, Cedar Run, New Jersey.

19.     Upon information and belief, at all relevant times, Defendants' annual gross volume of sales made or business done was not less than $500,000.00.

20.     At all relevant times Defendants have transacted business, including the employment of Dancers, within the State of New Jersey, including within this district.

21.     Plaintiff is unaware of the names and the capacities of those defendants sued as DOES 1 through 10 but will seek leave to amend this Complaint once their identities become known to Plaintiff.

22.     Upon information and belief, Plaintiff alleges that at all relevant times each defendant was the officer, director, employee, agent, representative, alter ego, or co-conspirator of the Defendants. In engaging in the alleged conduct herein, defendants acted in the course, scope of, and in furtherance of the aforementioned conspiracy. Accordingly, unless otherwise specified herein, Plaintiff will refer to all defendants collectively as "Defendants" and each allegation pertains to each of the defendants.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq*.

24.     This Court also has original jurisdiction over all claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). This is a putative class action whereby: (i) the proposed Rule 23 class consists of over 100 or more members; (ii) at least some of the members of the proposed class, including Plaintiff Logan, have a different citizenship from Defendants; and (iii) the claims of the proposed Rule 23 class exceed $5,000,000.00 in the aggregate.

25.     This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

26.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction in this district.

27.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

28.     The crux of the FLSA and NJ State Laws is, *inter alia*,: (i) that all employees are entitled to be paid mandated minimum wages for all hours worked; (ii) that all employees are entitled to premium overtime compensation for all hours worked in excess of forty hours per work week; and (iii) that all tips earned by an employee are the property of the employee and may not be withheld by the employer.

29.     Contrary to these basic protections, The Bare Exposure Club improperly classifies its Dancers, including Plaintiff, as "independent contractors" despite The Bare Exposure Club's near total control over them.  Consequently, Dancers are, and have been:  (i) deprived of the mandated minimum wage for all hours they worked; (ii) deprived of premium overtime compensation for all hours worked in excess of forty hours per work week; (iii) forced to improperly share a percentage of their tips with The Bare Exposure Club; and (iv) forced to reimburse The Bare Exposure Club for its ordinary business expenses.

30.     Plaintiff and the members of the Classes are, or were, Dancers who worked at Defendants' location at 2302 Pacific Avenue operating under the name "Bare Exposure."

31.     Defendants operate The Bare Exposure Club under uniform policies applicable to all the members of the Classes.  Through these policies and procedures, Defendants maintain significant supervision and control over Plaintiff and members of Classes.

32.     Notwithstanding Defendants' classification of Dancers as independent contractors, as set forth below, due to the amount of control Defendants have over their Dancers, Dancers are legally Defendants' employees.

### Hiring, Firing, and Scheduling

33.     Defendants have the power to hire and fire Dancers at will, and have rules governing the conditions under which Dancers work.

34.     The Bare Exposure Club requires Dancers to schedule their shifts in advance. Although Dancers are allowed to request specific shifts, The Bare Exposure Club's management exercises complete control over the final schedule.  The Bare Exposure Club can require certain Dancers to work particular shifts and can for any reason deny a Dancer's request to work a particular shift.

35.     The Bare Exposure Club controls the work hours of all dancers and scheduled shifts in advance. Plaintiff and other Dancers were required to work every Sunday and one weekday.

36.     Dancers are subject to discipline in the forms of fines, possible termination, or are not permitted to perform if they do not arrive for a shift at the predetermined time.

37.     Plaintiff's schedule varied during the course of her employment, though she typically tried to work every day.

38.     When first starting at the Bare Exposure Club, Plaintiff worked for 40 consecutive days, working 10, 12, or 14 hour shifts. Despite these long shifts, Defendants discouraged Dancers from taking breaks. Plaintiff had to plead for a 30 minute break even though she was working for 14 hours.

39.     On several occasions, Plaintiff worked more than forty hours in a given workweek. Despite this, Defendants did not pay her overtime wages. Indeed, Defendants never pay minimum or overtime wages to any Dancers, regardless of the number of hours the Dancers work.

40.     Dancers are required to use a key card to clock in as soon as they arrive for their shift. They must report to the main floor by their scheduled start time or they will be assessed additional fees. Even if Defendants' Club was completely empty, Dancers are required to be on the main floor and performing.

41.     Defendants' scheduling policy also requires that all Dancers stay until the end of their shift, under threat of fines or termination. Incredibly, even if a Dancer falls ill during a shift, she will not be permitted to leave the club immediately unless she pays a fine to the manager on duty.

42.     When the club closes at 4:00 a.m. during the weekdays and 6:00 a.m. on weekends, all Dancers must remain in the dressing room until club management gives them permission to leave. The Dancers are not compensated in any way for the time they spend waiting to leave.

## House Fees & Fines

43.     Rather than pay its Dancers the applicable minimum wage (either the applicable state minimum wage or the federal minimum wage, whichever is higher), Defendants classifies their Dancers as independent contractors and requires their Dancers to pay Defendants in order to work at Defendants' establishment. Consequently, Defendants do not compensate Dancers in an amount at least equal to the mandated minimum wage for each hour worked.

44.     Despite routinely charging customers a "cover fee" at the door, and selling food and alcohol, Defendants retain all of that income and do not pay Dancers any wages.

45.     Typically, there are "House Fees" for each shift worked. During the week, Dancers ready to perform at 6:00 p.m. are required to pay a fee of $20. For every hour after 6:00 p.m., the House Fee increases by $10. On weekends, Dancers are required to pay an $80 flat fee.

46.     When Dancers travel to perform at Defendant's club from out of town, they can stay in Defendant's "dormitory" housing during their stay. The $150 weekly cost of room and board is added to Dancers' fee total.

47.     Dancers must pay all fees every night they work regardless of the amount of tips they receive during their shift. Accordingly, a Dancer must pay the fees even if that means borrowing money from another Dancer or using an ATM machine. Defendants' system of fees, fines, and mandatory tips creates a realistic possibility that a Dancer may finish a shift with a negative balance, owing Defendants money from the Dancer's personal finances and taking home zero dollars for a day or night of work.

48.     Dancers are not permitted to perform if they have any outstanding fees or fines. Indeed, Defendants maintain a list of all Dancers and the current fines owed.

### Tip Retention & Mandatory Tip Outs

49.     Tips received by an employee belong to the employee and an employer has no ownership interest in said tips.  Section 203(m)(2)(B) of the FLSA specifically provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."  According to the DOL's regulations, "[t]ips are the property of the

employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA."
29 C.F.R. § 531.52.

50.     Despite the law's clear requirements, Defendants unlawfully retain a portion of
tips Dancers received from Defendants' customers.

51.     Moreover, Defendants also mandate the fees a Dancer must charge customers for
her services.  By way of example, Defendants maintains a policy establishing the amount a
Dancer is required to charge for private performances.

52.     Dancers are required to follow the following schedule of private dance prices,
with Defendants receiving a portion of each amount:

|  | Total Price | Dancer | Defendant |
| --- | --- | --- | --- |
| Private Dance  (15 min.) | $150.00 | $75.00 | $75.00 |
| Private Dance (20 min.) | $200.00 | $100.00 | $100.00 |
| Lap Dances | $25.00 | $15.00 | $10.00 |

53.     In addition, Defendants also subjects Dancers to mandatory tip-outs. That is,
Dancers are required to share their tips with certain of Defendants' employees. Importantly, the
individuals with whom Defendants requires its Dancers to share their tips do not provide
customer service or receive tips themselves.

54.     Upon information and belief, Defendants uses these mandatory Dancer tip-outs to
offset Defendants' ordinary business expenses. Stated another way, Defendants require Dancers
to share their tips with individuals so that Defendants can then reduce their labor costs by having
the Dancers supplement the compensation Defendants pay their other employees.

55.     Defendants have a *mandatory* tip out policy whereby Dancers must each pay a
minimum of (i) $5 to security or to the private dance attendant for every 30 minute private dance,

(ii) $10 to the club's DJ, per shift, (iii) $10 to the club's stage runner, per shift, (iv) $10 to the club's House Mom, per shift, and (v) $10 to the club's makeup artist, per shift.

56.     The aforementioned amounts are the required minimum tip-outs, and Defendants require Dancers to pay all tips by the end of their shift, regardless of how much money the Dancer has earned during the shift.

57.     As a result of the mandatory house fees, required tip-outs, and assessed fines, Dancers sometimes receive little to no actual compensation despite hours of work.

<u>**Additional Control**</u>

58.     As described below, Defendants exercise significant control over the Dancers' work environment through a variety of policies and rules.

59.     Defendants require Dancers to wear certain types of clothes. Dancers are required to have their hair and makeup done, to look nice for their performances, and additionally were required to wear dancer shoes during all of their performances. Defendants exercise authority over Dancers' apparel by refusing to let a Dancer perform if her clothing does not meet Defendants' requirements. Defendants do not reimburse Dancers for the cost of their apparel. In addition, Defendants do not pay for the cost of laundering or maintaining these required outfits. If a Dancers' make up is not satisfactory, the Dancer is required to use the club's makeup artist.

60.     A Dancer's stage performance must comply with certain rules set by Defendants. Dancers were required to go on a stage rotation when called by the DJ. The club's DJ controls the songs played. Although Dancers can ask for a certain type of music, the DJ exercises full and final control over the music selection. In many cases, a Dancer is forced to dance to songs chosen by another Dancer or chosen solely by the DJ.  If the DJ does not feel adequately tipped, the Dancers will be subject to bad music during their performances,

11

61.     Dancers are often required to do promotional work for the club, which includes attending outside events and distributing advertisements for the club. Dancers are never paid any compensation for this work although Defendants' would claim that they would make a reduction to a Dancer's House Fee.

62.     In short, The Bare Exposure Club maintains significant supervision and control over Plaintiff and members of the Classes and sets the rules governing the conditions under which Dancers work.  These rules are applied uniformly to Plaintiff and all other Dancers.

63.     Further, The Bare Exposure Club determines the rate and method of payment Dancers receive, including but not limited to the percentage of tips that The Bare Exposure Club retains and the fact that Dancers do not receive any wages while working at the club. By way of example, when a customer charges a tip to their credit card, Defendants automatically take 50% of that tip.

64.     The Bare Exposure Club has been unjustly enriched to the detriment of the Classes by:  (i) requiring Dancers to pay money out of their tips to subsidize the ordinary business expenses of the club; (ii) requiring Dancers to forfeit a portion of their tips to The Bare Exposure Club; (iii) paying Dancers less than the mandated minimum wage (indeed, no wages whatsoever) while failing to comply with the requirements for doing so; (iv) failing to pay Dancers premium overtime compensation for all hours worked in excess of forty in a work week; and (v) and requiring Dancers to advertise and promote the club, without compensating Dancers for their time.

65.     At all times relevant to this Complaint, Plaintiff believed she was, and in fact was, an employee of The Bare Exposure Club.

66.     Evidence generally reflecting the number of uncompensated hours worked by Dancers is in the possession of The Bare Exposure Club.

67.     While Plaintiff is unable to state at this time the exact amount owed to the Classes, Plaintiff believes that such information will become available during the course of discovery.  Irrespective of the foregoing, when an employer fails to keep complete and accurate time records, employees may establish the hours worked solely by their testimony and the burden of overcoming such testimony shifts to the employer.  *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946).

## CLASS & COLLECTIVE ACTION ALLEGATIONS

68.     Plaintiff brings this action on behalf of the Nationwide FLSA Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b).  Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the NJ Class for claims under the NJ State Laws.

69.     The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).  The claims brought pursuant to the NJ State Laws may be pursued by all similarly-situated persons who do not opt out of the NJ Class pursuant to Fed. R. Civ. P. 23.

70.     Upon information and belief, the members of each of the Classes are so numerous that joinder of all members is impracticable.  While the exact number of the members of these Classes is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are over one hundred individuals in each of the Classes.

71.     Defendants have acted or has refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole, appropriate.

72.     The claims of Plaintiff are typical of the claims of the Classes she seeks to represent.  Plaintiff and the members of the Classes work or have worked for The Bare Exposure Club and were subject to the same compensation policies and practices, including not being compensated for all hours worked.

73.     Common questions of law and fact exist as to the Classes that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)     whether Plaintiff and Dancers were improperly classified as independent contractors by Defendants;

(b)     whether Defendants failed to pay Dancers statutorily required wages for each hour worked;

(c)     whether Plaintiff and Dancers were required to pay Defendants, in cash, fees for each shift worked;

(d)     whether Defendants improperly retained any portion of Plaintiff's and Dancers' tips;

(e)     whether Defendants have failed to pay overtime compensation for all hours worked in excess of forty per work week;

(f)     whether Plaintiff and members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages;

(g)     whether Plaintiff and members of the Classes are entitled to restitution and/or liquidated damages; and

(h)     whether Defendants are liable for attorneys' fees and costs.

74.     Plaintiff will fairly and adequately protect the interests of the Classes, as her interests are aligned with those of the members of the Classes.  She has no interests adverse to the Classes she seeks to represent, and she has retained competent and experienced counsel.

75.     The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy.  The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

76.     Plaintiff and the Classes she seeks to represent have suffered and will continue to suffer irreparable damage from Defendants' illegal pay policies, practices and customs.

77.     Defendants have acted willfully and has engaged in a continuing violation of the FLSA and NJ State Laws.

**FIRST CLAIM FOR RELIEF**
**Fair Labor Standards Act**
**(On Behalf of the Nationwide FLSA Class)**

78.     Plaintiff, on behalf of herself and the Nationwide FLSA Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

79.     At all relevant times, Defendants have had gross annual revenues in excess of $500,000.00.

80.     At all relevant times, Defendants have been and continue to be, employers engaged in commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

81.     At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff and each of the Nationwide FLSA Class Members within the meaning of the FLSA.

82.     Pursuant to Defendants' compensation policies, rather than pay Dancers the federally-mandated wages, Defendants' improperly classify Plaintiff and other Dancers as independent contractors.

83.     As a result of Defendants' willful practices, The Bare Exposure Club was not entitled to pay Plaintiff and the members of the Nationwide FLSA Class less than the mandated wage for all hours worked.

84.     Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

85.     Due to Defendants' FLSA violations, Plaintiff and the members of the Nationwide FLSA Class are entitled to recover from Defendants: compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

<u>SECOND CLAIM FOR RELIEF</u>
**New Jersey State Wage and Hour Law, N.J. Stat. Ann. § 34:11-56a *et seq*.**
**Minimum Wage Violations**
**(On Behalf of the NJ Class)**

86.     Plaintiff, on behalf of herself and the members of the NJ Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein. At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff and each of the NJ Class Members within the meaning of the NJWHA § 34:11-56a1 (f) & (h).

87.     At all relevant times in the period encompassed by this Complaint, Defendants have had a willful policy and practice of improperly classifying Plaintiff and Dancers as

independent contractors and, consequently, failing to pay these individuals the applicable minimum wage for each hour worked.

88.     Pursuant to Defendants' compensation policies, Defendants improperly classify Dancers as independent contractors rather than pay Plaintiff and Dancers the New Jersey minimum wage.

89.     As a result of Defendants' willful practices, Defendants were not entitled to pay Plaintiff and the members of the NJ Class less than the New Jersey minimum wage for all hours worked.

90.     Defendants have violated and, continue to violate, the New Jersey Wage and Hour Law, § 34:11-56a *et seq.*

91.     Due to the Defendants' violations, Plaintiff, on behalf of herself and the members of the NJ Class, are entitled to recover from Defendants the amount of unpaid minimum wages, attorneys' fees, costs, and all other forms of relief deemed just and proper by the Court.

<u>**THIRD CLAIM FOR RELIEF**</u>
**The New Jersey Wage and Hour Law**
**N.J. Stat. Ann. § 34:11-56a4 *et seq*.**
**Overtime Wage Violations**
**(On Behalf of the NJ Class)**

92.     Plaintiff, on behalf of herself and the members of the NJ Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

93.     The NJWHL requires employers to pay non-exempt employees one-and-one half times the regular rate of pay for all hours worked in excess of forty hours in any one workweek.

94.     At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff and each of the NJ Class Members within the meaning of the NJWHA § 34:11-56a1 (f) & (h).

95.     At all relevant times in the period encompassed by this Complaint, Defendants have had a willful policy and practice of refusing to pay premium overtime compensation for all hours worked in excess of 40 hours per workweek.

96.     Pursuant to Defendants' policies and practices of classifying Plaintiff and Dancers as independent contractors, Plaintiff and the members of the NJ Class were not paid overtime for all hours worked in excess of forty per week.

97.     Defendants have violated and, continue to violate, the New Jersey Wage and Hour Law, N.J. Stat. Ann. § 34:11-56a4 *et seq.*

98.     Due to the Defendants' violations, Plaintiff, on behalf of herself and the members of the NJ Class, are entitled to recover from Defendants the amount of unpaid overtime wages, attorneys' fees, costs, and all other forms of relief deemed just and proper by the Court.

**FOURTH CLAIM FOR RELIEF**
**The New Jersey Wage Payment Law N.J. Stat. Ann. §34:11-4.1 *et seq.***
**Illegal Diversion of Wages**
**(On Behalf of the NJ Class)**

99.     Plaintiff, on behalf of herself and the NJ Class Members, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

100.    At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff and each of the NJ Class Members within the meaning of the NJWPL § 34:11-4.1 (a) & (b).

101.    Pursuant to the NJWPL § 34:11-4.2, Plaintiff and the members of the NJ Class were entitled to receive all compensation due and owing to them on their regular payday.

102.    As a result of Defendants' unlawful policies, Plaintiff and the members of the NJ Class have been deprived of compensation due and owing.

103.    Defendants required Plaintiff and members of the NJ Class to pay House Fees in order to work at Defendants' establishment. By requiring Plaintiff and members of the NJ Class to pay these fees, Defendants illegally diverted wages in violation of NJWPL § 34:11-4.4.

104.    Defendants' policy of requiring Plaintiffs and members of the NJ Class to tip Defendants' other employees such stage runners, club D.J., house mom, and other managers, Defendants' illegally diverted wages owed to Plaintiff and members of the NJ Class in violation of NJWP § 34:11-4.4.

105.    Further, due to Defendants' policy of deducting amounts from the tips of Plaintiff and the NJ Class to offset business expenses, Plaintiff and the NJ Class were subject to improper deductions from their compensation. To the extent that Defendants may have entered into an agreement with Plaintiff and NJ Class members regarding the payment of wage and deductions thereto, such agreements are null and void pursuant to NJWP § 34:11-4.7.

106.    Plaintiff, on behalf of herself and the members of the NJ Class, are entitled to recover from Defendants the amount of unpaid compensation and interest on said unpaid compensation.

## FIFTH CLAIM FOR RELIEF
### NJ Common Law - Unjust Enrichment/Quantum Meruit
### (On Behalf of the NJ Class)

107.    Plaintiff, on behalf of herself and the NJ Class Members, re-allege and incorporates by reference the paragraphs above as if they were set forth again herein.

108.    Plaintiff and the members of the NJ Class were employed by Defendants within the meaning of the NJ State Laws.

109.    At all relevant times, Defendants have had a willful policy and practice of denying Dancers their full share of gratuities.

19

110. During the class period covered by this Complaint, Defendants have had a willful policy and practice of having Dancers subsidize Defendants' business expenses by requiring Dancers to tip certain individuals a required minimum amount.

111. Moreover, Plaintiff and Dancers were subjected to unlawful deductions from their gratuities.

112. Defendants retained the benefits of their unlawful deductions from the gratuities from Plaintiff and Dancers under circumstances which rendered it inequitable and unjust for Defendants to retain such benefits.

113. Defendants were unjustly enriched by subjecting Plaintiff and Dancers to such unlawful deductions.

114. Defendants have had a willful policy and practice of requiring Dancers to participate in promotional events at the club without compensation.

115. Defendants retained the benefits of Plaintiff's and the NJ Class Members' time and promotional services under circumstances which rendered it inequitable and unjust for Defendants to retain such benefits.

116. Defendants were unjustly enriched by benefiting from the uncompensated time and efforts of Plaintiff and the NJ Class Members to promote Defendants' business.

117. As direct and proximate result of Defendants' unjust enrichment, Plaintiff and the members of the NJ Class have suffered injury and are entitled to reimbursement, restitution and disgorgement from Defendants of the benefits conferred by Plaintiff and the NJ Class.

118. Plaintiff the members of the NJ Class, are entitled to reimbursement, restitution and disgorgement of monies received by Defendants.

## PRAYER FOR RELIEF

20

WHEREFORE, Plaintiff, on behalf of herself, the Nationwide FLSA Class, and members of the NJ Class, prays for relief as follows:

a)  Designation of this action as a collective action on behalf of the Nationwide FLSA Class and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all Nationwide FLSA Class members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. § 216(b);

b)  Designation of Plaintiff as representative of the Nationwide FLSA Class;

c)  Designation of counsel of record as counsel for the Nationwide FLSA Class;

d)  Certification of this action as a class action on behalf of the NJ Class pursuant to Federal Rule of Civil Procedure 23;

e)  Designation of Plaintiff as representatives of the NJ Class;

f)  Designation of counsel of record as counsel for the NJ Class;

g)  A Declaration that Defendants have violated the FLSA;

h)  A Declaration that Defendants have violated the New Jersey Wage Payment Law;

i)  A Declaration that Defendants have violated the New Jersey Wage and Hour Law;

j)  A Declaration that Defendants have been unjustly enriched;

k)  An Order enjoining The Bare Exposure Club, its officers, agents, successors, employees, attorneys, assigns, and other representatives, and all those acting in concert with it at its direction, from engaging in any employment policy or practice which violates New Jersey State Law;

l)  An Order requiring Defendants to make whole those persons adversely affected by the policies and practices described herein by providing appropriate back pay, and reimbursement for lost wages in an amount to be shown at trial;

m)  A Declaration that Plaintiff and members of the NJ Class are entitled to the

value, *quantum meruit*, of the services rendered by them to the Defendants;

n)   An Order requiring Defendants to pay back to Plaintiff and members of the NJ Class the amounts representing Defendants' unjust enrichment and the value, *quantum meruit*, of the services rendered by them to the Defendants;

o)   All applicable statutory damages to Plaintiff, the Nationwide FLSA Plaintiffs, and members of the NJ Class;

p)   Appropriate liquidated damages to Plaintiff, the Nationwide FLSA Plaintiffs, and members of the NJ Class;

q)   Reasonable attorneys' fees and costs of action incurred herein; and

r)   Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: December 7, 2018                    Respectfully Submitted,

By:   */s/ Edward Ciolko*
          Edward Ciolko, Esq.
          eciolko@carlsonlynch.com
          NJ Bar No. 005462002
          Gary F. Lynch, Esq.
          glynch@carlsonlynch.com
          *pro hac vice forthcoming*

          **CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
          1133 Penn Avenue, 5th Floor
          Pittsburgh, PA 15222
          (p) (412) 322-9243
          (f) (412) 231-0246